UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- ------------------------------------------------------ X
MARIA GIANNAKOULIS,

                Plaintiff,                                            25-cv-01670-AMD

         -against-                                         **AMENDED COMPLAINT**

THE DEPARTMENT OF EDUCATION OF               *Jury Trial Demanded*
THE CITY OF NEW YORK, and MELISSA
AVILES-RAMOS BANKS individually and
as s Chancellor of the Department of
Education of the City of New York,

                Defendants.
- ------------------------------------------------------ X

      Plaintiff Maria Giannakoulis ("Plaintiff"), by and through her undersigned attorney, Stewart Lee Karlin, Stewart Lee Karlin Law Group, PC, sues the Defendant, the Department of Education of The City of New York (henceforth "Defendant or DOE"), and alleges as follows:

### PRELIMINARY STATEMENT

1.     This is a civil action seeking injunctive relief, monetary relief, including past and on- going economic loss, compensatory and other damages for violating Plaintiff's due process rights by failing to process Plaintiff's application for a medical exemption, failing to provide a dialogue on a reasonable medical accommodation so that she could continue to work, failing to give her a 3020-a arbitration hearing before being forced onto a leave without pay ("LWOP") and subsequently designating Plaintiff's personnel file in the PETS system as a "problem code."

### PARTIES

2.     At all times hereinafter mentioned, Plaintiff Maria Giannakoulis (hereinafter mentioned as "Plaintiff or "Ms. Giannakoulis "), resides within the County of Nassau, State of New York. Plaintiff was employed by the DOE at all times relevant as set forth in the Complaint.

1

3. Defendant the Department of Education of the City of New York (hereinafter "the DOE") is a political subdivision of the State of New York and is charged by law with responsibility for the operation, management, and control of the City of New York's public education. Defendant is within the jurisdiction of this Court. Defendant Chancellor Melissa Avilies-Ramos is the Chancellor of the DOE and was acting individually and in her official capacity of Chancellor at all times relevant in the complaint.

## FACTUAL STATEMENT

4. Ms. Giannakoulis has been a NYS Certified School Psychologist for the New York City Department of Education (DOE) for 16 years.

5. Ms. Giannakoulis has been an outstanding employee of the DOE. She has had satisfactory ratings every year with glowing recommendations from every administrator and supervisor she has worked with.

6. On September 18th, 2021, Plaintiff was informed that SOLAS was now accepting applications to request an exemption to the vaccine.

7. On September 24, 2021, Plaintiff emailed the NYC DOE Employee Relations to notify them that she was unable to obtain the medical documentation required in time for their deadline. Therefore, would not be getting the vaccine without medical clearance from a doctor due to Pericarditis.

8. On September 27, 2021, Employee Relations replied to the Plaintiff's email, "You may submit your application for an exemption or accommodation at any point. Once you have your medical documentation, you can start the process in SOLAS."

9. On October 4, 2021, Plaintiff was placed on an involuntary Leave Without Pay.

10. On October 5, 2021, Plaintiff received the results from an echocardiogram as well as documentation from the doctor stating "pericarditis." Pericarditis is a swelling and irritation of the

thin, saclike tissue surrounding the heart (pericardium). Pericarditis caused Plaintiff sharp chest pains. Depending on the severity of Pericarditis, it can be life-threatening.

11. Plaintiff submitted a SOLAS application to be exempt from the vaccine mandate due to her Pericarditis. This precise medical condition was given an accommodation in the Scheinman Impact Bargaining Award issued on September 10, 2021. (See Exhibit "A)

12. On October 18, 2021, Plaintiff called and emailed HR to check on the status of her application in SOLAS, which still showed "in progress." Plaintiff was informed it was "case by case" and no time frame could be given.

13. On October 26, 2021, Plaintiff emailed Employee Relations again regarding the status of her application.

14. On November 29, 2021, Plaintiff was still on an extended leave without pay status due to the application still being "in progress."

15. Due to the DOE's refusal to timely process Plaintiff's vaccine exemption request due to her heart disease, on December 15, 2021, Plaintiff filed a Step 1 grievance with the UFT.

16. Thereafter, on January 3, 2022, she contacted HR to ask about her application "in progress."

17. However, there was still no decision on Plaintiff's application for a medical exemption in SOLAS.

18. Thereafter, on January 4, 2022, Plaintiff contacted ODA, Employee Relations, and LWOPquestions@schools.nyc.gov via email to check on the status of her application, but there was still no decision in SOLAS.

19. Thereafter, on January 4, 2022, ODA responded via email to keep checking the status of the application in SOLAS and to reach out to the union for further guidance.

20. On January 19, 2022, a Step 2 grievance process began.

21. On January 28, 2022, Plaintiff received a SOLAS email stating "Denial of medical

3

exemption" with the reason listed: "Medical condition not a valid reason to defer or delay the vaccination." The reason provided for the denial of the medical exemption is patently false. In fact, Pericarditis is an actual condition listed as an option on the application.

22. On February 10th, 2022, a Step 2 grievance hearing was held.

23. On March 1st, 2022, the Grievance decision was received and denied.

24. Thereafter, Plaintiff's condition significantly improved (Pericarditis), and thus Plaintiff, on July 26, 2022, uploaded the first dose of the COVID-19 Vaccine into the vaccination portal following medical clearance by her cardiologist.

25. On August 1st, 2022, Plaintiff notified in SOLAS of her intention to return to work following medical clearance by a cardiologist.

26. Thereafter, on September 6, 2022, Plaintiff returned to work.

27. Subsequently, on or about February 14, 2023, Plaintiff became aware that her fingerprints were still tagged in the New York City Department of Education's 'Problem Code' at the Human Resources' Office of Personnel Investigations on October 4, 2021, due to her not handing in a valid COVID vaccination card. She was given no other information.

28. The 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct. Therefore, the New York City Department of Education has considered Plaintiff guilty of some kind of misconduct without giving her a chance to clear her name and have a hearing on the matter, before putting her fingerprints into a Problem Code database.

29. Plaintiff was placed on the 'Problem Code' at the Human Resources Office of Personnel Investigations. This means that Defendants placed her fingerprints in a database at the Office of Personnel Investigations. The 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct or have been shown to be

4

incompetent. Neither of these labels applies to Plaintiff's work or career.

30.     There is a flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts.

31.     It is a simple ask to check on a computer, and she would indicate "yes" or "no" within a minute. (See affidavit of Betsy Combier as Exhibit "B" which should be deemed expressly incorporated into the complaint)

32.     When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

33.     The flag has several names, such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

34.     There were many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file. (See Exhibit B)

35.     Attached as Exhibit B to the Affidavit of Betsy Combier is a true and correct redacted copy of an email received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies to UFT officials, including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

5

36. Also, non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

37. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, known as Galaxy. Galaxy indicates whether the employee has a problem code in his or her file, and blocks payment to the employee with this flag/code if viewed in the personnel file.

38. Many individuals with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing, and were not hired by prospective schools due to the problem code.

39. Even outside the DOE, such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

40. These schools were able to see the codes because the position applied for was financed by the DOE, and so the school used the Galaxy system and could check the prospective employee's file.

41. In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

42. Further, the individual is almost never notified of a problem code in their personnel file until the individual gets nominated for a position. Thus, the individual cannot be hired until the problem code is removed, which takes months to do, and thus, the position is lost. One cannot find another position for months due to the problem code. (assuming the problem code is removed).

43. Further, there is only an interview many months later, which is also an inadequate process.

44. Because the 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct or incompetency, Plaintiff and others have been stigmatized without a name-clearing hearing on the matter.

6

45. Therefore, the New York City Department of Education considered Plaintiff as not getting vaccinated as 'misconduct', which means that Plaintiff is unemployable as a teacher in the education field.

46. As a result of the actions above, Plaintiff is blocked from the DOE system, and this affects her ability to work and make a living.

47. Thus, Plaintiff has been stigmatized without a name-clearing hearing on the matter, before putting her fingerprints into a Problem code database.

48. Additionally, as an employee of the NYC DOE for 16 years in good standing with tenure, Plaintiff had a property and liberty right to her job, and should have been given a 3020-a arbitration hearing on her not submitting a valid COVID vaccination card in October 2021, as stated in her contract and in Education Law §3020:

"Education Law §3020 states in relevant part:

> *No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article"*

49. Plaintiff has been damaged thereby by loss of future income, by damage to her reputation and consequent inability to secure other employment, and by extreme emotional and psychological upset and distress.

50. This "punish without proof" approach illustrates the public policy behind the due process clause and Education Law §3020. See generally *Abromovich*, Supra (holding that the public policy expressed in the tenure statutes is designed to protect individual teachers, as public servants, from being dismissed without a hearing once their competency has been demonstrated).

51. Defendant has been acting under the color of state law at all times relevant.

## FIRST CLAIM FOR RELIEF
## FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

52. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above as if the same were fully set forth at length herein.

53. Defendants while acting under the color of law, unlawfully deprived the Plaintiff of her right to Equal Protection of the Laws guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's medical condition.

54. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, and wholly irrational.

55. New York City was the only school district location in New York State that mandated getting vaccinated or being terminated for public employees. New York City was also the only school district where the tenure law was ignored and tenured educators were suspended without pay and terminated without a 3020-a hearing. Every other tenured educator in the State, whether vaccinated or not, were given accommodations such as masks and testing. Anyone designated for charged misconduct received a 3020-a hearing.

56. As a direct result of Defendants' violation of the Plaintiff's Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

57. Defendants' violation of Plaintiff's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages, including backpay.

58. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis of her medical condition, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment in violation of 42 U.S.C. § 1983, applying the 14th Amendment.

**SECOND CLAIM FOR RELIEF**
**A VIOLATION OF PLAINTIFF'S RIGHTS TO A**
**CONSTITUTIONALLY PROTECTED DUE PROCESS**
**HEARING AS A TENURED TEACHER**
**MANDATED BY EDUCATION LAW 3020 AND 3020-A**
**AND BEING STIGMATIZED BY A PROBLEM CODE**

59. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above as if the same were fully set forth at length herein.

60. Plaintiff was punished with wrongfully being disciplined for her alleged "insubordination" in not getting vaccinated with the COVID vaccine without a §3020-a hearing and no accommodation offers or review by the Defendants.

61. Education Law Section §3020, Chapter 16, Title 4, Article 61 states as follows:

> "Discipline of teachers.
>
> 1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article;
> 2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

62. Plaintiff did not, at any time, waive her rights to a §3020-a hearing. She wanted her due process rights to be honored. Instead, she was declared insubordinate by the Department, her personnel file was flagged, and her fingerprints were tagged with a "Problem Code" designating misconduct and put into the same database used by the FBI.

63. Tenured teachers have a property and liberty right to their jobs, and therefore, when there is any penalty that reduces the benefits of these rights, there must be Just Cause.

9

64. As a result of the Defendant's actions and inactions as set forth above, Plaintiff has been, and continues to be, deprived of her Federal rights under 42 U.S.C., Section 1983 and the Fourteenth Amendment due process rights of the U.S. Constitution.

65. As a result of Defendant's actions, Plaintiff suffered and was damaged.

66. Defendant has deprived Plaintiff of such rights under color of State Law.

67. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith terminated and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List without due process of law. Based on the foregoing, Defendants violated Plaintiff's due process rights in violation of 42 U.S.C. § 1983, applying the 14th Amendment.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for all compensatory, emotional, psychological, and any other damages permitted by law pursuant to the above-referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1. Awarding Plaintiff all the backpay and financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay, and having assigned her a problem code;

2. Awarding Plaintiff all the backpay and financial damages that ensued after she was separated from her salary, placed on a lawless and unconstitutional Leave Without Pay, and never given a 3020-a arbitration hearing or an accommodation for her documented medical condition, which prohibited her from getting the COVID vaccination in the fall of 2021;

3. Compensatory damages for past and future economic losses.

4. An award of reasonable Attorney fees and litigation costs;

5. Granting such other and further relief that the Court deems just and proper

Dated: New York, New York
      September 15, 2025

                          Yours, etc.,

                          STEWART LEE KARLIN
                          LAW GROUP, P.C.,
                          *Attorneys for Plaintiff*
                          111 John Street, 22nd Floor,
                          New York, New York 10038
                          (212) 792-9670

                          By:    *s/ Stewart Lee Karlin*
                                   STEWART LEE KARLIN