UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                               :

**MARIA GIANNAKOULIS,**
                               :

                      Plaintiff,    :  **MEMORANDUM DECISION AND ORDER**

        – against –         :  25-CV-1670 (AMD) (PCG)

                               :

**THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK** and **MELISSA AVILES-RAMOS,** individually and as Chancellor of the Department of Education of the City of New York,
                               :

               Defendants.  :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff, a tenured school psychologist, brings this case against the New York City Department of Education ("DOE") and the former DOE Chancellor, in her individual and official capacities. (ECF No. 13 ¶¶ 3, 4, 48.) The plaintiff makes claims under 42 U.S.C. § 1983 ("Section 1983") for equal protection and procedural due process violations under the Fourteenth Amendment to the United States Constitution. (*Id.* ¶¶ 52–67.) Her claims arise out of the DOE's vaccine mandate, which required DOE employees to be vaccinated against COVID-19. (*See id.*)[1] Before the Court is the defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion to dismiss.

---

[1] The Court treats the plaintiffs' lawsuit against the DOE as one against the City of New York. *See Broecker v. N.Y.C. Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *1 n.1 (2d Cir. Dec. 26, 2023).

**BACKGROUND**[2]

## I.     The COVID Vaccine Mandate

On March 12, 2020, New York City Mayor Bill de Blasio declared a "state of emergency in the City to address the threat posed by COVID-19." (ECF No. 18-3 at 21.) On August 23, 2021, Mayor de Blasio and New York City Commissioner of Health and Mental Hygiene David Chokshi announced a "vaccine only" mandate for people who worked in DOE buildings. (ECF No. 18-1 at 11.)[3] Under the new mandate, employees had to show that they had started the COVID-19 vaccination protocol by September 27, 2021. (*Id*.) The mandate did not provide for medical or religious exceptions or accommodations. (ECF No. 18-3 at 8.)

On September 1, 2021, the United Federation of Teachers ("UFT") filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact and implementation of the vaccine mandate. (ECF No. 18-1 at 11–12; *see also* ECF No. 18-3 at 4–16.) An arbitrator presided over mediation and issued an arbitration award on September 10, 2021. (ECF No. 18-1 at 12; *see also* ECF No. 18-4.) The arbitration award established, among other things, (1) a process for exemptions, accommodation requests, and appeals; (2) a leave without pay ("LWOP") system for employees who did not request an exemption or were denied an exemption, but would continue to receive health insurance; (3) options for employees on

---

[2] The facts are drawn from the complaint, the plaintiff's opposition, and documents and exhibits that the plaintiff includes with the complaint or incorporates into the complaint by reference. *See Williams v. Time Warner Inc*., 440 F. App'x 7, 9 (2d Cir. Sept. 28, 2011) (summary order) ("[A] district court . . . is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated into the complaint by reference." (citation modified)). "[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Zoulas v. N.Y.C. Dep't of Educ*., 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (*quoting Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002)).

[3] This was a change from the July 2021 "vaccination-or-testing" mandate that required New York City workers, including educators, to be vaccinated against COVID or to test weekly. (ECF No. 18-1 at 11; ECF No. 18-3 at 7–8.)

LWOP to extend or separate from the DOE and receive benefits; and (4) a "unilateral separation" process for employees who did not comply with the mandate and had no approved exemption or accommodation, or did not separate or extend their LWOP.  (ECF No. 18-4 at 6–18.)  Educators were required to submit requests for exemptions or accommodations by September 20, 2021.  (*Id.* at 7.)

## II.    Factual Background

The plaintiff, a tenured school psychologist, has worked for the DOE for over sixteen years.  (ECF No. 13 ¶¶ 4, 48.)  She was diagnosed with pericarditis, "a swelling and irritation of the thin, saclike tissue surrounding the heart," which caused her "sharp chest pains."  (*Id.* ¶ 10.)  Pericarditis was one of the "valid reasons" for "temporary medical exemptions to the vaccine mandate" identified in the September 10, 2021 arbitration award.  (ECF No. 18-4 at 8 (citation modified); *see also* ECF No. 13-1 at 2 (DOE database listing "pericarditis or myocarditis" as a medical reason for an exemption).)  On September 24, 2021, the plaintiff emailed DOE Employee Relations, stating that she wanted a medical exemption from the vaccine mandate but could not get the necessary documentation by the September 20 deadline.  (ECF No. 13 ¶ 7.)  On September 27, 2021, Employee Relations responded that the plaintiff could apply "for an exemption or accommodation at any point."  (*Id.* ¶ 8.)  However, the plaintiff was placed on LWOP on October 4, 2021.  (*Id.* ¶ 9.)  The next day, the plaintiff received documentation from her doctor regarding her condition, including the results from an echocardiogram.  (*Id.* ¶ 10.)  She then applied for an exemption.  (*Id.* ¶ 11.)

The plaintiff chose to extend her LWOP through September 6, 2022, and remain eligible for health insurance benefits.  (ECF No. 18-1 at 13.)  On November 29, 2021, she executed a waiver and release, which stated the following:

> I, **MARIA GIANNAKOULIS**, opt to extend my leave without pay due to vaccination status through September 6, 2022. I understand that by selecting to extend such leave, I will be eligible to maintain health insurance through September 6, 2022.
>
> I understand that if I have not returned by September 6, 2022, I shall be deemed to have voluntarily resigned and knowingly waive my rights to challenge such resignation. . . . I understand that upon the effective date of such resignation, as it relates to the DOE, I lose all entitlements to reversion, retention, and tenure.
>
> I understand that I am prohibited from engaging in gainful employment while I am on unpaid leave at the DOE.
>
> I understand that I have the right to return to employment at any time prior to September 6, 2022, if I provide to the DOE documentation that I have complied with the Commissioner of Health's order regarding vaccination of NYC Department of Education employees and inform the DOE that I seek to return before September 6, 2022. In exchange for the right to return and extended health benefits as set forth herein, I agree to waive and release the DOE and any of its present or former employees or agents (collectively the "Released Parties"), from any and all claims, liabilities, or causes of action which were or could have been asserted by me against any of the Released Parties based upon anything that has happened up to now and including the date of the execution of this Attestation, including, but not limited to, any right or claim that may exist or arise up to and including the date that this Attestation is signed.
>
> For Employees Currently Age Forty (40) and Older Only: If I am currently age forty (40) or older, I acknowledge that in accordance with the Older Workers Benefit Protection Act: (i) I enter into this release voluntarily and with full understanding and knowledge of its consequences; (ii) I have been advised by the DOE to consult with an attorney prior to executing this agreement and release; (iii) I have been provided at least a twenty-one (21) day period to review and consider whether to sign this Attestation; and (iv) I have been advised that I have seven (7) days following execution to revoke it . . . .

(ECF No. 18-5 at 1.)

The plaintiff's exemption application was pending for months, during which she remained on LWOP. (*Id.* ¶¶ 12–20.) She contacted the DOE repeatedly for updates. (*Id.*) In response to one email, a representative of the UFT told the plaintiff that the DOE would not

approve her request, because she submitted it after the deadline.  (ECF No. 21 at 19.)  The plaintiff responded, attaching the September 27, 2021 email in which someone from Employee Relations told her that she could apply for an exemption at any point.  (*Id.*)  Still, the plaintiff's application remained "in progress."  (*Id.*)

The plaintiff eventually initiated "Step 1" and "Step 2" of the UFT's grievance process.  (ECF No. 13 ¶¶ 15, 20.)  Finally, in a January 28, 2022 email, the DOE denied her exemption request, because her "[m]edical condition [was] not a valid reason to defer or delay the vaccination."  (*Id.* ¶ 21.)  A hearing on the plaintiff's grievance was held on February 10, 2022, and her claim was denied on March 1, 2022.  (*Id.* ¶¶ 22–23.)

The plaintiff's pericarditis "significantly improved," and her cardiologist cleared her to receive the COVID-19 vaccine.  (*Id.* ¶ 24.)  On July 26, 2022, she sent the DOE proof that she received the first dose of the vaccine.  (*Id.*)  Shortly thereafter, the plaintiff told the DOE that she intended to return to work, and did so on September 6, 2022.  (*Id.* ¶¶ 25–26.)

On February 14, 2023, the plaintiff learned that on October 4, 2021, the DOE "tagged" her fingerprints with a "problem code," because she did not submit proof of vaccination.  (*Id.* ¶ 27.)  The DOE did not remove the problem code once she complied with the mandate.  (*Id.*)[4] The plaintiff alleges that the DOE uses problem codes to flag employees who have committed misconduct or "have been shown to be incompetent" and to "indicate that they should not be hired."  (*Id.* ¶¶ 28–30.)  She states that the codes are submitted to databases maintained by the Federal Bureau of Investigation ("FBI") and the New York State Division of Criminal Justice

---

[4] At the November 12, 2025 pre-motion conference, counsel for the defendants stated that she believed the problem code had been removed.  (Conference Transcript 3:6-7.)  However, in their reply in support of the motion to dismiss, the defendants deny that "any 'problem code' ever existed in a DOE file." (ECF No. 24 at 10.)

Services.  (*Id.* ¶ 32.)  The plaintiff alleges that problem codes are also reflected in "Galaxy," the system that the DOE uses to pay DOE employees and to fund some jobs outside of the DOE at schools located outside New York City.  (*Id.* ¶¶ 36–40.)

### III.   Procedural History

The plaintiff filed this action in New York Supreme Court, Kings County, on March 14, 2024.  (ECF No. 18-1 at 9.)  She amended her complaint on February 25, 2025; she substituted Defendant Melissa Aviles-Ramos in place of David C. Banks, withdrew the state law claims, and pled a single cause of action under Section 1983.  (*Id.*)  The defendants removed the case to federal court on March 26, 2025.  (*Id.*)  On June 23, 2025, the defendants requested a pre-motion conference to discuss their anticipated motion to dismiss.  (ECF No. 9.)  In response, the plaintiff asked to amend the complaint, which the Court granted.  (ECF No. 11; *ECF Scheduling Order dated Aug. 26, 2025*.)  The plaintiff amended the complaint on September 15, 2025.  (ECF No. 13.)  After a November 12, 2025 pre-motion conference (*ECF Minute Entry dated Nov. 12, 2025*), the Court granted the plaintiff leave to amend the complaint again (*ECF Scheduling Order dated Dec. 9, 2025*), but she did not file a second amended complaint.  The amended complaint states claims under Section 1983 for violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.  (ECF No. 13 ¶¶ 52–67.)[5]  The plaintiff seeks backpay and financial damages from when she was on LWOP, "[c]ompensatory damages for past and future economic losses," attorney's fees and litigation costs, and "such other and further relief that the Court deems just and proper."  (*Id.* at 10–11.)[6]

---

[5] The defendants move to dismiss state law claims that the plaintiff "attempts to assert."  (ECF No. 18-1 at 17.)  The plaintiff does not assert any state law claims.  (ECF No. 21 at 13 n.1.)

[6] Although the complaint states that the plaintiff is seeking injunctive relief (*see* ECF No. 13 ¶ 1), she does not describe the injunctive relief she seeks, and does not mention injunctive relief in the

**LEGAL STANDARD**

To survive a Federal Rule of Civil Procedure 12(b)(b) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court deciding a Rule 12(b)(6) motion may examine "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). Pleadings are construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

**DISCUSSION**

**I.      Waiver**

The defendants argue that the Court must dismiss the complaint, because the plaintiff "waived her rights to bring this action" in the November 29, 2021 agreement, in exchange for the DOE extending her LWOP. (ECF No. 18-1 at 18; *see also* ECF No. 18-5 at 1.) "A plaintiff may waive a statutory claim for discrimination as long as it is done knowingly and voluntarily." *Shain v. Ctr. for Jewish Hist., Inc.*, No. 04-CV-1762, 2006 WL 3549318, at *3 (S.D.N.Y. Dec. 7, 2006) (citing *Bormann v. AT & T Commc'ns, Inc.*, 875 F.2d 399, 401–02 (2d Cir. 1989),

---

complaint's demand section or in her opposition to the motion to dismiss. (*See id.* at 10–11; ECF No. 21.) Therefore, the Court does not address injunctive relief.

*superseded by statute on other grounds*, 29 U.S.C. § 626(f)); *see also Kim v. Cnty. of Nassau*, No. 19-CV-3264, 2020 WL 6149712, at *10 (E.D.N.Y. Oct. 2, 2020) (discussing waiver of discrimination claims, including claims pursuant to Section 1983), *rep. & recommendation adopted*, 2020 WL 6146881 (E.D.N.Y. Oct. 20, 2020); *Rozenfeld v. Dep't of Design & Constr.*, 875 F. Supp. 2d 189, 199–201 (E.D.N.Y. 2012) (same).  The Second Circuit uses a "totality of the circumstances" test to determine whether a release of discrimination claims is "knowing and voluntary."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998); *see also Rozenfeld*, 875 F. Supp. 2d at 199–201 (applying "totality of the circumstances" test to conclude that the plaintiff waived his rights to bring claims under Section 1983).  Relevant factors include:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. . . .  In addition, courts have considered a seventh factor — whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so.

*Livingston*, 141 F.3d at 438 (citation modified) (citing *Bormann*, 875 F.2d at 403).

The plaintiff argues that the waiver was not "knowing and voluntary," because she lacked equal bargaining power, did not have access to the waiver before signing, did not play any role in determining its terms, did not have the chance to consult with her union before signing, and "was compelled to sign the agreement under duress."  (ECF No. 21 at 12–13.)  The defendants respond that according to the waiver, the plaintiff had twenty-one days to review it, as well as a seven-day revocation period, and was advised to consult with an attorney before signing it. (ECF No. 24 at 5–8; *see also* ECF No. 18-5 at 1.)  The defendants also state that the plaintiff was "was represented by her union representative during the process of receiving, reviewing, and

executing the Waiver." (*Id.* at 7–8.)  This factual dispute precludes resolution of the waiver issue, because the Court does not have enough information to determine whether the waiver passes the "totality of the circumstances" test at the motion to dismiss stage.  *See Livingston*, 141 F.3d at 438 (concluding that the lower court lacked sufficient information to evaluate a waiver and dismiss the action where the complaint did not describe the plaintiff's education or employment experience and did not specify how long the plaintiff had to review the agreement).[7]

## II.    Claims Under Section 1983

Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.'"  *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

---

[7] In any event, the waiver probably would not bar all of the plaintiff's claims.  The plaintiff agreed to waive "any and all claims . . . based upon anything that has happened up to now and including the date of the execution of this Attestation" — November 29, 2021.  (ECF No. 18-5 at 1.)  Therefore, the release shields the defendants from liability for conduct through November 29, 2021, including placing the plaintiff on LWOP.  (*See* ECF No. 13 ¶ 9.)  It does not protect them from liability for conduct after that date, including denying the plaintiff's exemption request or keeping her problem code in place after she returned to work.  (*See id.* ¶¶ 21, 27.)  *See Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1485 (2d Cir. 1995) ("Although the releases shield the [defendants] from any liability for any conduct through their effective dates, they do not protect the [defendants] from liability arising from any subsequent conduct.").

9

a.      **Claims Against Defendant Aviles-Ramos**

To state a Section 1983 claim against Chancellor Aviles-Ramos in her individual capacity, the plaintiff must allege that the chancellor was personally involved in a constitutional deprivation. *Wright v. Smith*, 21 F. 3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991))).  The plaintiff admits that "the Complaint does not contain any allegations of [Aviles-Ramos's] personal involvement in the conduct at issue."  (ECF No. 21 at 13.) Therefore, the plaintiff does not state a claim against Chancellor Aviles-Ramos in her individual capacity, so the individual capacity claims are dismissed.

Likewise, the Court dismisses the plaintiff's official capacity claims against the chancellor.  "In an official capacity suit, the real party in interest . . . is the governmental entity and not the named official." *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (citation modified); *see also Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself.").  Thus, a court may dismiss claims against an official where they are duplicative of claims against the agency. *See Montgomery v. Orange Cnty.*, No. 25-180, 2025 WL 2924978, at *1 (2d Cir. Oct. 15, 2025) (summary order) ("We affirm dismissal of the official-capacity claims against Hankins and DuBois as duplicative of the municipality-liability claim against Orange County . . . .") Because the plaintiff states the same claims against the DOE and Chancellor Aviles-Ramos, the Court dismisses the official capacity claims against the former chancellor.

10

#### b. Equal Protection Claims Against the DOE

The Fourteenth Amendment's Equal Protection Clause prohibits states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "There are three types of equal protection claims, which are partially overlapping: (1) intentional discrimination; (2) selective enforcement; and (3) class of one." *MacDonald v. Cnty. of Suffolk*, No. 22-CV-188, 2026 WL 1453872, *7 (E.D.N.Y. May 22, 2026); *see also Hu v. City of New York*, 927 F.3d 81, 90–91 (2d Cir. 2019) (describing types of equal protection claims).

It is not clear which equal protection claim the plaintiff is bringing, or which of the DOE's actions the plaintiff is challenging on equal protection grounds. The plaintiff's opposition frequently combines equal protection and due process analyses and intersperses arguments about the exemption denial with broad criticisms of the DOE's vaccine policies. (*See* ECF No. 21 at 16–21; *see also* ECF No. 13 ¶¶ 53–55.) The Court construes the complaint to raise two equal protection arguments: (1) a challenge to the DOE's denial of the plaintiff's exemption request under the selective enforcement theory (*see* ECF No. 13 ¶ 53 (alleging that the defendants "engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's medical condition")), and (2) a challenge to the denial of her exemption request under the class of one theory (*see* ECF No. 13 ¶ 54 (alleging that the defendants "selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment")).[8]

---

[8] The complaint also states that "New York City was the only school district location in New York State that mandated getting vaccinated or being terminated for public employees." (ECF No. 13 ¶ 55.) To the extent that the plaintiff is making an equal protection challenge to the vaccination policy, she cannot succeed. The Equal Protection Clause requires the DOE to "treat all similarly situated people alike." *MacDonald*, 2026 WL 1453872, *7 (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)). It does not require the DOE to treat its employees the same way that other localities treat their employees.

> ### i.    Selective Enforcement

To state a selective enforcement claim, the plaintiff must allege that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  This standard requires the plaintiff to "alleg[e] facts that plausibly show a reasonably close resemblance between the plaintiff[] and a comparator who received more favorable treatment" from the DOE.  *Id.*  The complaint does not plead facts sufficient to satisfy this test.

The plaintiff does not identify any "similarly situated" people whom the defendants treated differently than the plaintiff.  She alleges that pericarditis was a condition warranting exemption from the vaccine mandate (ECF No. 13 ¶ 11), but does not allege that the DOE selectively granted medical exemptions anyone else.  Instead, the plaintiff maintains that other school districts in the state gave "accommodations such as masks and testing" to educators who could not comply with vaccination mandates.  (ECF No. 13 ¶ 55.)  Educators in school districts outside of New York City are not DOE employees, *see* N.Y. Educ. Law § 2590-b (describing the governance of "the city school district of the city of New York"), so they are not "similarly situated" to the plaintiff, because they were never subject to the DOE's vaccine policy.  *See Hu*, 927 F.3d at 91–93.  In an effort to avoid this result, the plaintiff attaches documents to her opposition, purporting to show that some DOE teachers were allowed to work remotely.  (ECF No. 22-3; ECF No. 22-4.)  One teacher was "temporarily directed to report remotely while administratively reassigned" on October 17, 2022, because of "administrative office space

changes." (ECF No. 22-3 at 2.)  Others were employed as part of "Virtual Learning Classrooms," which "aim[ed] to partner teachers from around the city with students to provide them with increased access to courses not available in their home schools" from September 2022 to June 2023.  (ECF No. 22-4 at 3.)  "[A] plaintiff generally may not amend [her] complaint through [her] opposition to a motion to dismiss." *Colliton v. Bunt*, No. 15-CV-6580, 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016) (citation omitted), *aff'd*, 709 F. App'x 82, 83–84 (2d Cir. 2018).  But even if the Court were to consider these documents, there is no evidence that these assignments had anything to do with the vaccine mandate, let alone that these employees were given accommodations that the plaintiff was not.  Accordingly, the plaintiff has not established that there are comparators with a "reasonably close resemblance" to the plaintiff.  *See Hu*, 927 F.3d at 91.

Nor does the complaint include any facts to suggest an "impermissible motivation." *Id.* (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)).  The complaint asserts only that the DOE "intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees" based on her medical condition.  (ECF No. 13 ¶¶ 53, 54.)  These "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim.  *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555); *see also D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005) (citing *Albert v. Carovano*, 851 F.2d 561, 572, 573–74 (2d Cir. 1988)) ("Conclusory allegations of selective treatment may not survive a motion for dismissal."), *aff'd sub nom. D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 180 F. App'x 232 (2d Cir. 2006).

13

ii.     Class of One

A plaintiff bringing a class of one claim must allege that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (first citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923); and then citing *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cnty.*, 448 U.S. 336 (1989)); *see also Hu*, 927 F.3d at 91 (discussing class of one claims). But the plaintiff cannot state a class of one claim, because she is a public employee. In *Engquist v. Oregon Department of Agriculture*, the Supreme Court barred public employees from bringing these claims against their government employers. 553 U.S. 591, 594 (2008); *see also Hu*, 927 F.3d at 95 (discussing *Engquist*). The Court explained that a class of one cause of action would be unreasonable in the employment context, because "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify," *Engquist*, 553 U.S. at 604, and the "government has significantly greater leeway in its dealings with citizen employees than in bringing its sovereign power to bear on citizens at large," *id.* at 599. The plaintiff maintains that *Engquist* does not apply, because her "medical classification" was "specifically held to be exempt" from the vaccination mandate. (ECF No. 21 at 17.) She cites no authority for this argument, nor is the Court aware of any. Indeed, *Engquist* is unequivocal: "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist*, 553 U.S. at 598.

In short, the plaintiff has not stated an equal protection claim under the selective enforcement or class of one theory. Because she has not alleged "the deprivation of any right[]

14

. . . secured by the Constitution," she has not stated a Section 1983 claim. *Harrison*, 95 F. Supp. 3d at 321. The Court accordingly dismisses her first cause of action.

### c.      Due Process Claims Against the DOE

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The complaint alleges that the plaintiff was "wrongfully . . . disciplined for her alleged 'insubordination' in not getting vaccinated with the COVID vaccine without a § 3020-a hearing and no accommodation offers or review" by the DOE and was "maliciously and in bad faith terminated and stigmatized permanently by being placed on the Ineligible/Inquiry or 'no hire' Problem Code List without due process of law." (ECF No. 13 ¶¶ 60, 67.) Accordingly, the Court construes the complaint as raising a procedural due process claim and a so-called "stigma plus" claim via Section 1983.

#### i.      *Procedural Due Process*

"To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, [a court] must first identify the property interest involved. Next, [it] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *Hurley v. Dep't of Educ.*, No. 24-CV-1664, 2025 WL 2711471, at *10 (E.D.N.Y. Sept. 23, 2025) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)). The plaintiff argues that "[t]enured teachers have a property and liberty right to their jobs" (ECF No. 13 ¶ 63), and the DOE deprived her of this right by placing her on LWOP and tagging her with a problem code without holding a hearing or otherwise following the disciplinary procedures established by N.Y. Educ. Law §§ 3020 and 3020-a (*id.* ¶¶ 60–62). The plaintiff is correct that her tenured position is "a protected liberty or property interest for

15

purposes of a due process claim." *Baker-Pacius v. Dep't of Educ.*, No. 25-CV-743, 2026 WL 693521, *8 (E.D.N.Y., Mar. 12, 2026) (citing *Hurley*, 2025 WL 2711471, at *10), *recons. granted on other grounds*, 2026 WL 1758262 (E.D.N.Y. June 18, 2026)); *see also Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (finding that the plaintiffs "possessed a constitutionally protected property interest in their tenure as public employees, terminable only for cause" (citing *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997))).  The plaintiff received constitutionally adequate process.

"[U]nder New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth in N.Y. Educ. Law §§ 3020, 3020-a." *Broecker v. N.Y.C. Dep't of Educ.*, 585 F. Supp. 3d 299, 318 (E.D.N.Y. 2022) *aff'd,* No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), *and aff'd*, No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023).  Courts have held that the COVID-19 vaccine mandate was "a lawful condition of employment." *Id.* at 315–18.  Thus, once the mandate went into effect and the plaintiff did not get the vaccine, she was no longer qualified for her position.  *See Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) ("District courts in this Circuit have found that where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim."); *Tandian v. State Univ. of N.Y.*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023) ("[T]o be qualified for her position as a Teaching and Research Center Nurse 2, Plaintiff must have been vaccinated against COVID-19 or received a medical exemption; it is undisputed that she did neither.").  Nor was the plaintiff entitled to a Section 3020-a hearing before the DOE

16

placed her on LWOP and assigned her a problem code. *See Broecker*, 585 F. Supp. 3d at 319 ("[B]ecause the Court finds that receiving a vaccination against COVID-19 is a condition of employment for NYC DOE employees, the NYC DOE need not pursue the disciplinary procedures contained in New York Education Law Section 3020-a . . . prior to terminating NYC DOE employees due to their noncompliance with the Vaccination Mandate.").

Second, to the extent that the plaintiff alleges that she was entitled to process other than a Section 3020-a hearing, that claim also fails. "Pre-deprivation processes 'need not be elaborate,' and the Constitution 'mandates only that such process include, at a minimum, notice and the opportunity to respond.'" *Fugelsang v. Dep't of Educ.*, No. 23-CV-8332, 2025 WL 974276, *5 (E.D.N.Y. Mar. 31, 2025) (quoting *O'Connor*, 426 F.3d at 198). Moreover, "[t]he opportunity to respond need not be a formal hearing." *Id.* at *6 (citing *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991)).

The plaintiff admits that she received notice of the vaccination mandate and the process to apply for an exemption. (ECF No. 13 ¶ 6.) Additionally, the arbitration award provided an appeals process. If the DOE denied a timely exemption request, educators could request review by the arbitrator and retain their employment status while the appeal was pending. (ECF No. 18-4 at 10–12.) Courts have repeatedly found that the process that the plaintiff received here — "the ability to submit a request for exemption from a mandate before any consequences are imposed" — "is an adequate opportunity to be heard." *Fugelsang*, 2025 WL 974276, at *6 (citing *Garland v. City of New York*, 665 F. Supp. 3d 295, 307 (E.D.N.Y. 2023) (finding that the opportunity to respond was adequate where "FDNY employee[s] who challenged whether the [v]accine [m]andate should apply to them" had the opportunity to seek a religious or medical accommodation" and "were *not* suspended without pay" if they submitted the request before a

17

deadline)); *see also Baker-Pacius*, 2026 WL 693521, at *8; *Hurley*, 2025 WL 2711471, at *10–11.  The plaintiff did not submit an exemption request by the specified deadline, so she was placed on LWOP.  (ECF No. 13 ¶¶ 9–10.)  Nevertheless, she was still able to appeal the DOE's denial of her request, and it was reviewed in a "Step 2 grievance hearing."  (*Id.* ¶¶ 22–23.)[9]

In short, the defendants gave the plaintiff notice of the consequences for complying with the vaccination mandate, she had an opportunity to be heard before she was placed on LWOP, and she had the opportunity to appeal the denial of her request for an exemption.  This process is constitutionally adequate, so the plaintiff has not alleged a procedural due process violation.

  *ii.*  *Stigma Plus*

The Fourteenth Amendment's Due Process Clause protects against a person's loss of reputation when that loss constitutes the deprivation of a federally protected liberty interest.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 573–75 (1972) ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971))); *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994) ("[L]oss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest.").  "For a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal" or suspension from government employment.

---

[9] The plaintiff refers to the February 10, 2022 hearing as a "Step 2 grievance hearing."  (ECF No. 13 ¶ 22.)  Conversely, the defendants describe it as an "appeal hearing" "consistent with the process established in the Arbitration Award."  (ECF No. 18-1 at 14.)  If there is any distinction between the two types of hearings, it is immaterial, because the parties agree that her exemption request was reviewed at the hearing.  (ECF No. 13 ¶¶ 22–23; ECF No. 18-1 at 14.)

*Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).  "This type of claim is commonly referred to as a 'stigma-plus' claim."  *Id.*

To state a "stigma plus" claim, the plaintiff must show (1) that the government made stigmatizing statements that call the plaintiff's "good name, reputation, honor, or integrity" into question; (2) that these statements were made public; and (3) that the statements were made "concurrently in time" to the plaintiff's placement on LWOP.  *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 27 (E.D.N.Y. 2006).  In addition, "a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation modified).

The plaintiff alleges that she has been "stigmatized without a name clearing hearing on the matter" because the DOE designated her fingerprints with a "problem code."  (ECF No. 21 at 11.)  She claims that this means that she is "blocked from the DOE system, and this affects her ability to work and make a living."  (*Id.*)  The plaintiff alleges that the problem code also "prevents her from securing employment outside the [DOE] in New York City due to the associated stigma," and affects her ability to get a job in the private sector because "if [she] is nominated for any position in the private sector, she must undergo a background check through the PETS system, which will show her as ineligible, with most private schools and vendors in New York City." (*Id.* at 14.)

Courts in this circuit have consistently held that "DOE's placement of a[n] . . . employee in its internal problem-code database is insufficiently 'public to future potential employers' to create a liberty interest and support a due process claim."  *Valvo v. Dep't of Educ.*, No. 19-CV-

19

8341, 2021 WL 1063759, at *4 (S.D.N.Y. Mar. 18, 2021); *see also Arroyo v. N.Y.C. Dep't of Educ.*, No. 19-CV-7416, 2020 WL 4570380, at *14 (S.D.N.Y. Aug. 6, 2020). "This is the case even where — as here — a plaintiff alleges that 'the FBI refers to Defendant's budgetary database, Galaxy, which houses problem code designations, and anyone with the code cannot be paid by [the DOE] or any vendors working in New York City.'" *Ruscelli v. Dep't of Educ.*, No. 23-CV-7475, 2026 WL 381642, at *7 (E.D.N.Y. Jan. 7, 2026) (quoting *Jean v. Dep't of Educ.*, No. 24-CV-264, 2025 WL 2782533, at *6 n.7 (E.D.N.Y. Sept. 30, 2025)). The plaintiff makes conclusory assertions that the FBI, the state Division of Criminal Justice Services, and some non-DOE schools could get access to the problem code (ECF No. 13 ¶¶ 32, 37), but she does not allege that these third parties actually saw or used the code. This is insufficient to support the publication requirement, so the plaintiff's does not state a stigma plus claim. *See Lynch v. Dep't of Educ.*, 822 F. Supp. 3d 258, 286–87 (E.D.N.Y. 2026) ("While Plaintiff alleges that the Problem Code is entered into Defendants' Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB), such an argument is insufficient to raise a claim." (citation modified)); *Kirkhart v. Dep't of Educ.*, No. 25-CV-3525, 2026 WL 1224011, at *5 (E.D.N.Y. May 5, 2026) ("And with regard to the latter claim that the database is sent to the FBI and Office of Victims' Services, such naked assertions do not suffice to satisfy the stigma-plus publication requirement, especially because courts in this District have found that the FBI's referral to, and use of, the Galaxy database is insufficient to support the publication requirement of a stigma-plus claim." (citation modified)).

The plaintiff has not alleged a violation of the Due Process Clause. Therefore, she has not stated a Section 1983 claim, and her second claim for relief must be dismissed. *See Harrison*, 95 F. Supp. 3d at 321.

20

### III.    Leave to Amend

The plaintiff argues that "[i]f the Complaint is deficient, Plaintiff should be permitted pursuant to the Federal Rule of Civil Procedure 15(a) to amend the complaint." (ECF No. 21 at 21.)  Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, "when a plaintiff does 'not advise the district court how the complaint's defects would be cured,'" denying leave to amend is "not an abuse of discretion." *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) (summary order) (quoting *Porat v. Lincoln Towers Cmty. Assoc.*, 464 F.3d 274, 276 (2d Cir. 2006)).  That is particularly true when a plaintiff "request[s] leave to amend in a cursory manner without any explanation for how they would be able to cure the complaint's defects." *Id.*; *see also Doe v. Syracuse Univ.*, No. 22-2674, 2023 WL 7391653, at *3 (2d Cir. Nov. 8, 2023) (summary order) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." (quoting *Powell v. Ocwen Loan Servicing*, LLC, 840 F. App'x 610, 614 (2d Cir. 2020) (summary order))).

The plaintiff has not explained how she would amend the complaint, or how she could cure the complaint's defects.  She says simply that "given the rule regarding the liberal amendment of pleadings, the Court should grant leave if the Complaint is deficient." (ECF No. 21 at 22.)  The plaintiff already amended her complaint once, after the parties exchanged pre-motion conference letters. After the pre-motion conference, the Court gave her another opportunity to amend the complaint, an opportunity that she did not take.  *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55–56 (2d Cir. 2025) (holding that the district court did not abuse its discretion in denying leave to amend the complaint, where the plaintiff was "put on notice of the

21

deficiencies in the Complaint and had ample opportunity to address them" (citation modified)), *cert. denied*, 146 S. Ct. 885 (2025).  Accordingly, the Court denies the plaintiff leave to amend.

## CONCLUSION

For these reasons, the defendants' motion is granted and the complaint is dismissed with prejudice.  The Clerk of Court is respectfully directed to enter judgment dismissing the case and close the case.

**SO ORDERED.**

s/Ann M. Donnelly
_____

ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
       July 22, 2026